IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LARRY KREBS,

                              Plaintiff[1],

                                                         Civ. Action No.
          vs.                                            9:08-CV-255 (NAM/DEP)

ELLIOT SPITZER, *et al.*,

                              Defendants.

_____

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF:

LARRY KREBS, *pro se*


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT-RECOMMENDATION AND ORDER

          The clerk has forwarded to the court a complaint, together with an

application to proceed *in forma pauperis* and a motion for appointment of

counsel, along with a properly executed inmate authorization form, all of

which were submitted by plaintiff Larry Krebs, who is currently

_____

          [1]          While in the caption of his complaint Krebs refers to himself as "plaintiff",
elsewhere within the body of that pleading he refers to himself variously as plaintiff,
petitioner, and plaintiff/petitioner.  This interchange serves to highlight the uncertainty
which, as will be seen, exists with respect to the nature of this action and the claims
being asserted.  For the sake of clarity I will refer to Krebs as the "plaintiff."

incarcerated at Shawangunk Correctional Facility in Wallkill, New York.
Dkt. Nos. 1-3, 5. Plaintiff has not paid the statutory filing fee for this
matter.

In his *pro se* complaint the plaintiff, who was convicted of
manslaughter in the second degree, claims that his constitutional rights to
due process and equal protection were violated during the course of his
appearance before the New York State Board of Parole ("BOP").
According to the plaintiff, while he was initially granted parole following a
hearing on December 13, 2005, that decision was later rescinded
pursuant to a policy adopted by former New York Governor George
Pataki, and adhered to by the defendants, to deny release to class-C, non-
violent felony offenders based solely on the serious nature of the offense,
without regard to consideration of rehabilitation and other relevant factors.
*See*, *e.g.*, Complaint (Dkt. No. 1) at ¶¶ 112-14. Plaintiff claims that the
defendants, in creating and following such a policy, have violated his
constitutional rights. *Id.* Plaintiff also alleges that defendants' actions
violated state law, his Eighth Amendment rights prohibiting cruel and
unusual punishment, and the *ex post facto* clause of the United States
Constitution. *Id.* at ¶¶ 8, 79, 93.

As a result of these actions, plaintiff asserts claims under 42 U.S.C.

§ 1983 and additionally seeks habeas intervention pursuant to 28 U.S.C.

§§ 2241 and 2254.  Complaint (Dkt. No. 1) ¶¶ 95-96.  As relief, plaintiff

seeks injunctive and declaratory relief, as well as monetary damages in

the form of reimbursement of his financial losses, additionally requesting

release from prison because his parole was improperly rescinded in

violation of the United States Constitution.  *Id.* at pp. 33-34.

I.      DISCUSSION

        A.      *In Forma Pauperis* Application

        After reviewing plaintiff's *in forma pauperis* application, I find that he

may properly commence this action *in forma pauperis* because he has set

forth facts establishing sufficient economic need.  *See* Dkt. No. 2.

        B.      Complaint

        Since I have found that plaintiff meets the financial criteria for

commencing this action *in forma pauperis*, I must now consider the

sufficiency of the allegations set forth in the complaint in light of 28 U.S.C.

§ 1915(e).  This section, which governs proceedings *in forma pauperis*,

directs, in pertinent part, that "the court shall dismiss the case at any time

if the court determines that – . . . (B) the action . . . – (i) is frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii)

seeks monetary relief against a defendant who is immune from such

3

relief."  28 U.S.C. § 1915(e)(2)(B).  It is the court's responsibility to determine whether a plaintiff may properly maintain his complaint in this district before the court may permit a plaintiff to proceed with an action *in forma pauperis*.  *See* 28 U.S.C. § 1915(e)(2).

Moreover, under 28 U.S.C. § 1915A, a court must review any complaint in a civil action in which a prisoner seeks redress from officers or employees of a governmental agency and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (citation omitted). An action is frivolous as a matter of law when, among other things, it is "'based on an "indisputably meritless legal theory,'" i.e., when it "lacks an arguable basis in law . . . or [when] a dispositive defense clearly exists on the face of the complaint. . . ."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation and citation omitted).

Although the court has a duty to show liberality to *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise extreme caution in ordering *sua sponte* dismissal of a *pro se*

4

complaint "*before* the adverse party has been served and both parties . . .

have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37,

41 (2d Cir. 1983) (citations omitted), there is a responsibility on the part of

the court to determine that a claim is not frivolous before permitting a

plaintiff to proceed.  *See Fitzgerald v. First E. Seventh St. Tenants Corp.*,

221 F.3d 362, 363 (2d Cir. 2000) (district court may dismiss frivolous

complaint *sua sponte* notwithstanding fact that the plaintiff has paid the

statutory filing fee); *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991)

(per curiam) (district court has power to dismiss a complaint *sua sponte* if

the complaint is frivolous).

> 1.   Due Process Claim

This action is brought, in part, pursuant to 42 U.S.C. § 1983 which

provides, in pertinent terms, that

> [e]very person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State . . . subjects, or causes to be subjected, any
> citizen of the United States . . .  to the deprivation
> of any rights, privileges, or immunities secured by
> the Constitution and laws, shall be liable to the
> party injured. . . .

To successfully state a claim under this section for denial of due process,

a plaintiff must show that he or she 1) possessed an actual liberty interest,

and 2) was deprived of that interest without being afforded sufficient

5

process.  *See Tellier v. Fields,* 260 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); *Hynes v. Squillance*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).  "[T]he first inquiry in the analysis of an alleged due process violation is whether there exists a protected liberty interest" which is at stake in the case.  *Barna*, 1999 WL 305515, at *1 (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908 (1989)).

In a case such as this, the burden initially rests with the plaintiff to show that he or she enjoys a protected liberty interest under New York's statutory parole scheme.  While the presence or absence of language in a state's parole provisions mandating release was once regarded as dispositive on this score, *see, e.g. Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 11-13, 99 S. Ct. 2100, 2106-07 (1979), the Supreme Court has more recently held that the focus of the inquiry should be on the nature of the interest allegedly created by the state.  *Sandin v. Conner*, 515 U.S. 472, 479-83, 115 S. Ct. 2293, 2298-2300 (1995).

Analysis of the plaintiff's due process claim, at least in the first instance, therefore hinges upon whether New York's parole regime confers upon him a legitimate expectation in release on parole prior to the

6

expiration of his sentence. Careful review of New York's parole provisions reveals no basis to find the existence of such a protected liberty interest in being released on parole. *Barna*, 1999 WL 305515, at *2; *see also Larocco v. New York State Div. of Parole*, No. 9:05-CV-1602, 2006 WL 1313341, at *2 (N.D.N.Y. May 12, 2006) (McAvoy, S.J.). N.Y. Executive Law § 259-i(2)(c), the statute which governs the parole process, affords broad discretion to the BOP in determining whether to grant or deny an inmate's application for early release. For this reason, the Second Circuit has recognized that the New York State parole process creates no legitimate expectation of release mandating that an inmate seeking release be afforded the full panoply of procedural due process protection. *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001); *see Morel v. Thomas*, No. 02 CV 9622, 2003 WL 21488017, at *4 (S.D.N.Y. June 26, 2003). As that court has succinctly noted, "[n]either the mere possibility of release . . . nor a statistical probability of release . . . gives rise to a legitimate expectancy of release on parole" sufficient to support a due process claim. *Barna,* 239 F.3d at 170-71 (citations omitted).

This is not to say that a prison inmate may constitutionally be denied parole for purely arbitrary or otherwise impermissible reasons. *Boddie v. New York State Div. of Parole*, 288 F. Supp. 2d 431, 440 (S.D.N.Y. 2003).

7

To the contrary, the courts have recognized a limited due process right of New York inmates not to be denied parole for reasons which are arbitrary or capricious, or based on a protected classification or irrational distinction.  *See Standley v. Dennison*, No. 9:05-CV-1033, 2007 WL 2406909, at *9 (N.D.N.Y. Aug. 21, 2007) (Sharpe, D.J.) (collecting cases); *see also see also Graziano v. Pataki*, No. 06 Civ. 0480, 2006 WL 3082, at *7-9  (S.D.N.Y. July 17, 2006) (holding that prison inmates do not have a constitutional right to release on parole, but recognizing "a due process right to have the decision made only in accordance with the statutory criteria" specified by state law).

New York law directs the BOP to consider certain specified factors, among them being the underlying offense, but does not specify the weight to be attached to each factor.  N.Y. Exec. Law § 259-i(2)(c)(A); *Mitchell v. Conway*, No. 04 CV 1088, 2006 WL 508086, at *4 (E.D.N.Y. Mar. 1, 2006).  That section specifically provides that

> [d]iscretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law.

8

N.Y. Exec. Law § 259-i(2)(C)(A) (McKinney's, 2007). Accordingly, "[t]he parole board may in its discretion find that any one of these factors, including the severity of the inmate's offense of conviction, outweighs the other factors in a particular case and is grounds to deny parole." *Mitchell*, 2006 WL 508086, at *4.

In this instance the plaintiff argues that the BOP acted improperly by rescinding the grant of his parole based on false information provided at a victim impact meeting, violating the BOP's own rules and regulations as well as N.Y. Executive Law § 259-i. The factors weighed by the BOP in arriving at its determination are not clear on the face of plaintiff's complaint, and therefore I am unable to consider them in conjunction with the circumstances of his criminal conviction. Accordingly, I recommend that plaintiff's due process claim not be subject to *sua sponte* dismissal at this time.

### 2.   Equal Protection Clam

Plaintiff appears to allege that as a class-C, non-violent felony offender, he has been treated just as harshly as violent felony offenders, in violation of his constitutionally-guaranteed equal protection rights. Complaint (Dkt. No. 1) at ¶ 48. He also alleges that the nature of the offense is the only factor given any weight in determining whether he is

9

eligible for parole, "while due consideration is being given to other statutory criteria in determining whether other prisoners not so convicted will be granted parole release." *Id.* at ¶ 114.

The Equal Protection Clause directs state actors to treat similarly situated people alike. *See City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985). To prove a violation of the Equal Protection Clause, a plaintiff must demonstrate that he or she was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995) (citing, *inter alia*, *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767 (1987)). The plaintiff must also show that the disparity in treatment "cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not reasonably related to [any] legitimate penological interests." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225, 121 S.Ct. 1475 (2001) (internal quotation marks omitted)).

Plaintiff's equal protection allegations, while skeletal, likely are sufficient to proceed at this juncture. Although these allegations are not frivolous, I do not make any determination at this time as to whether they

10

could withstand a motion to dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. I accordingly recommend that plaintiff's equal protection claim arising under section 1983 also not be subject to *sua sponte* dismissal at this time.

### 3. Cruel and Unusual Punishment Claim

Plaintiff claims that the suspension of his parole and continued incarceration beyond his minimum sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. "Detention beyond the termination of a sentence can constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest." *Wright v. Kane*, No. 94 Civ. 3836, 1997 WL 746457, at *4 (S.D.N.Y. Dec. 2, 1997) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-06, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)); *Calhoun v. New York State Division of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993)). Plaintiff cannot show that he was deprived of a constitutional right "because he was not incarcerated beyond his term . . .," i.e., he has not yet completed his maximum term of incarceration.[2] *Wright*, 1997 WL 746457, at *4. Accordingly, it is evident that plaintiff has failed to has failed to state a claim under the Eighth Amendment upon

---

[2]      On May 13, 2002, plaintiff was sentenced to an indeterminate term of five (5) to fifteen (15) years imprisonment. Complaint (Dkt. No. 1) at ¶ 20.

which relief can be granted, and I therefore recommend that this cause of action be dismissed.

### 4.    State Law Claims

Plaintiff also alleges that the parole board violated state law by rescinding his parole based on false testimony from the victim's family, which was belatedly received after he was granted parole on December 13, 2005.  Complaint (Dkt. No. 1) at ¶ 79.  Plaintiff's state law claims, however, are not cognizable under section 1983.  "The method for appealing state administrative proceedings that are irregular is through an Article 78 proceeding in state court, not a federal civil rights action." *Green v. Coughlin*, 633 F. Supp. 1166, 1171 (S.D.N.Y. 1986).  Indeed, plaintiff filed a petition for a writ of habeas corpus in state court pursuant to Article 70 of New York's Civil Practice Law and Rules, which was converted by the court to an Article 78 proceeding and was subsequently denied.  Complaint (Dkt. No. 1) at ¶¶ 82-83.  Accordingly, I recommend that plaintiff's state law claims be dismissed.

### 5.    *Ex Post Facto* Claim

Plaintiff further complains that the recision of his parole, which according to him was based on a policy perpetuated by the governor and the BOP, was an "unconstitutional ex post facto enhancement of the

12

indeterminate sentence imposed by the sentencing court."  Complaint
(Dkt. No. 1) at ¶ 93.

Among the protections afforded by the Constitution is the prohibition
against a state passing any *ex post facto* law.  See U.S. Const. art. I, § 10.
Under this provision, laws which "retroactively alter the definition of crimes
or increase the punishment for criminal acts" are prohibited.  *Collins v.*
*Youngblood,* 497 U.S. 37, 43, 110 S. Ct. 2715, 2719-20 (1990).  Indeed,
changes in state parole procedures, "even if adverse to an inmate and
adopted after the inmate's incarceration, cannot violate the Ex Post Facto
Clause because such procedures are not 'laws.'" *Parks*, 2004 WL 377685,
at *4 (citing *Barna*).

Like the plaintiff in *Parks*, Krebs appears to view defendants' refusal
to release him as making his punishment more burdensome.  *Id.*
Plaintiff's continued incarceration, however, is consistent with the
indeterminate sentence imposed of five to fifteen years imprisonment
pursuant to the relevant statute.  *See* N.Y. Penal Law § 70.00(2)
(indicating that the sentence for a class C felony "shall not exceed fifteen
years").  Accordingly, it is apparent that defendants' actions did not violate
the *ex post facto* clause.  Moreover, in this instance both the plaintiff's
potential exposure to criminal sanctions and his sentence remained

constant before and after his conviction, and were not impacted by intervening events occurring after his trial and sentencing.  What Krebs now challenges is the alleged implementation of a policy, following his sentencing, which would potentially negate or minimize the possibility of early release on parole, without actually increasing his maximum exposure to punishment.  In recognition of this critical distinction the argument now being raised has been firmly rejected by several other courts, including the Second Circuit, particularly since the challenged policy is neither a law, nor does it have the effect of retroactively punishing a crime.  *Barna*, 239 F.3d at 171; *Parks*, 2004 WL 377658, at *4.  As the Second Circuit has noted, "[t]he *Ex Post Facto* Clause does not apply to guidelines that do not create mandatory rules for release but are promulgated simply to guide the parole board in the exercise of its discretion. . . . Such guidelines 'are not 'laws' within the meaning of the ex post facto clause.'" *Barna*, 239 F.3d at 171 (citing and quoting *DiNapoli v. Northeast Regional Parole Comm'n*, 764 F.2d 143, 145-47 (2d Cir.), *cert. denied,* 474 U.S. 1020, 106 S. Ct. 568 (1985)).

Accordingly, I recommend the dismissal of plaintiff's *ex post facto* claim as lacking in merit.[3]

---

[3]        Although "the usual practice is to allow leave to replead a deficient complaint, *see* Fed. R. Civ. P. 15(a); *see also Ronzani v. Sanofi, S.A.*, 899 F.2d 195,

14

C.    Allegations Pursuant to 28 U.S.C. § 2254 and 28 U.S.C. §
      2241

In addition to seeking relief pursuant to 42 U.S.C. § 1983, plaintiff

asserts his entitlement to a writ of habeas corpus "pursuant to 28 U.S.C.

2254 *and/or* 2241", Complaint (Dkt. No. 1) at p. 33 (emphasis added),

claiming that he is subject to release from prison because the denial of his

parole was unconstitutional.

Section 2241 permits a district court to grant a writ of habeas corpus

to a "prisoner . . . in custody in violation of the Constitution or laws or

treaties of the United States."  28 U.S.C. § 2241(c)(3).  Section 2254, by

its terms, applies to "application[s] . . . in behalf of . . . a person in custody

in violation of the Constitution of the United States."  28 U.S.C. § 2254(a).

A state prisoner's challenge to the execution of his or her sentence must

be brought under section 2254.  *James v. Walsh*, 308 F.3d 162, 167 (2d

Cir. 2002) (holding that a state prisoner may challenge either the

imposition or the execution of his or her sentence under section 2254);

*Pena v. Ellis*, No. 07 CV 2736, 2007 WL 4565032, at *3 (E.D.N.Y. Dec.

21, 2007).  Accordingly, a state prisoner seeking release who is

---

198 (2d Cir. 1990), such leave may be denied where amendment would be futile, *see
Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam) ("Where
it appears that granting leave to amend is unlikely to be productive, . . . it is not an
abuse of discretion to deny leave to amend.")."  *Price v. Hasly*, No. 04-CV-0090S, 2004
WL 1305744, at *2 (W.D.N.Y. June 8, 2004).

challenging a parole board's denial of his request for parole is required to bring that challenge pursuant to 28 U.S.C. § 2254.  *See Rossney v. Travis*, No. 00 Civ. 4562, 2003 WL 135692, at *5 (S.D.N.Y. Jan. 17, 2003). It appears that the grounds for such a challenge may be based, *inter alia*, on claims of due process and equal protection violations.  *See*, *e.g.*, *Morel v. Thomas*, No. 02 CV 9622, 2003 WL 21488017, at *3 (S.D.N.Y. June 26, 2003) (indicating that petitioner brought section 2254 petition on the grounds that the parole board violated his constitutional rights to due process and equal protection under the Fourteenth Amendment when it denied his request for parole).  Krebs therefore may pursue his request for release under section 2254, rather than section 2241.

Plaintiff's filing, however, as currently styled, seeks injunctive, declaratory and monetary relief pursuant to 42 U.S.C. § 1983, as well as release pursuant to 28 U.S.C. § 2254.  Plaintiff cannot maintain both claims in a single proceeding.  *See Myrick v. Keane*, No. 95-CV-1360, 1998 WL 146275, at *3-4 (N.D.N.Y. Mar. 27, 1998) (Pooler, D.J.) ("To the extent [a] plaintiff claims he [or she] is entitled to release from custody, he may not seek such relief in a Section 1983 proceeding) (citing *Presser v. Rodriguez*, 411 U.S. 492, 500, 93 S. Ct. 1827, 1841 (1973)).  While I recommend the dismissal of plaintiff's allegations alleging state law

16

violations, as well as his claims under the *ex post facto* clause, and the Eight Amendment, I further recommend that petitioner be afforded the opportunity to choose to proceed with his remaining due process and equal protection claims under *either* section 1983 or section 2254.  If plaintiff chooses to pursue injunctive, declaratory and/or monetary relief, he should amend his complaint to allege the remaining due process and equal protection allegations under section 1983.  If, on the other hand, plaintiff chooses to pursue release from incarceration, he should be aware that he must amend his filing to raise his due process and equal protection claims in a section 2254 petition seeking habeas relief.

     D.   Motion to Appoint Counsel

Also presently before me is plaintiff's motion for appointment of counsel.  *See* Dkt. No. 3.

In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion.  In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance.  If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination.  *Terminate Control Corp.*, 28 F.3d at 1341 (quoting *Hedge*

17

*v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)).  Of these criteria, the most important is the merits, *i.e.*, "whether the indigent's position was likely to be of substance." *McDowell v. State of New York*, No. 91 CIV. 2440, 1991 WL 177271, at *1 (S.D.N.Y. Sept. 3, 1991) (quoting *Cooper v. A. Sargenti & Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989)).  Indigents do not have to demonstrate that they can win their cases without the aid of counsel; they do have to show likely merit.  *Id.*

This action was only recently commenced.  It is apparent that plaintiff's pleading must be amended prior to the defendants filing a response to any allegations contained therein, and the only facts upon which this court may base its decision as to whether this lawsuit is of substance are those portions of plaintiff's complaint wherein he states the facts surrounding his claim.  Where a plaintiff does not provide a court with evidence, as opposed to mere allegations, relating to his or her claims, such party does not meet the first requirement imposed by the Second Circuit relative to applications seeking appointment of pro bono counsel. *See Harmon v. Runyon*, No. 96-Civ.-6080, 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997).

In light of the foregoing, the I will deny plaintiff's motion for appointment of counsel without prejudice.  After the plaintiff has amended

18

his pleading, upon its acceptance by the court and the subsequent filing of a response from the defendants, he may choose to file a new motion for appointment of counsel, at which time the court might be better able to determine whether such appointment is warranted in this lawsuit. Plaintiff is advised that any future motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

WHEREFORE, based upon the above, it is hereby

RECOMMENDED, that plaintiff's claims pursuant to state law, the Eighth Amendment, and the *ex post facto* clause be DISMISSED for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

RECOMMENDED, that plaintiff be afforded the opportunity to choose to proceed with his remaining due process claims under *either* section 1983 or section 2254. If plaintiff chooses to pursue injunctive, declaratory and/or monetary relief, which would not include an order directing his release from prison, but which could, *inter alia*, enjoin the BOP from failing to follow prescribed procedures, he should amend his complaint to allege the remaining due process and equal protection allegations under section 1983. If, however, plaintiff chooses to pursue

19

release from incarceration, he should be aware that he must amend his filing to raise his due process and equal protection claims in a section 2254 petition[4]; and it is further

ORDERED, that plaintiff's *in forma pauperis* application (Dkt. No. 2) is GRANTED[5]; and it is further

ORDERED, that plaintiff's motion for appointment of counsel (Dkt. No. 3) is DENIED without prejudice to renew at some future time for the reasons stated above.  Any future motion for appointment of counsel must be accompanied by documentation that substantiates plaintiff's efforts to retain counsel on his own.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

---

[4]    In theory, a third alternative may exist for the plaintiff in that he may be permitted to file two separate actions in this court, one under section 1983 seeking injunctive, declaratory and monetary relief for his remaining claims, and the other pursuant to section 2254 seeking release from prison.

[5]    Plaintiff should note that although the application to proceed *in forma pauperis* has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

It is hereby ORDERED that the clerk of the court serve a copy of this Report, Recommendation and Order upon the plaintiff in accordance with this court's local rules.


Dated:     April 11, 2008
           Syracuse, NY



David E. Peebles
U.S. Magistrate Judge

21