IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LARRY KREBS,

                            Plaintiff,

                                                    Civ. Action No.

            vs.                                     9:08-CV-255 (NAM/DEP)

THE NEW YORK STATE DIVISION OF
PAROLE, *et al.*,

                            Defendants.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

LARRY KREBS, *pro se*
02-A-2927
Shawangunk Correctional Facility
750 Prison Road
P.O. Box 700
Wallkill, NY 12589

FOR DEFENDANTS:

HON. ANDREW M. CUOMO            MICHAEL McCARTIN, ESQ.
Attorney General of the        Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

        Plaintiff Larry Krebs, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983 against the "New York State Division of Parole" and various members and employees of the New York Parole Board, alleging deprivation of his civil rights.[1]  Plaintiff's complaint, as amended, centers upon a Parole Board ("Board") decision in December of 2005 bestowing him parole and establishing an open release date for February 21, 2006 and a subsequent determination rescinding that grant of parole.  Plaintiff asserts that the denial of parole was the product of a procedural due process deprivation and represented a denial of equal protection, and seeks declaratory, injunctive and monetary relief including compensatory and punitive damages.

In response to plaintiff's complaint, as amended, defendants have moved seeking its dismissal on a variety of grounds, principally asserting absolute and qualified immunity from suit based upon their positions and the nature of plaintiff's claims.  Having carefully considered defendants' motion, which plaintiff has opposed, I recommend that it be granted, and that plaintiff's claims in this action be dismissed.

---

[1]     As will be seen, plaintiff's initial complaint purported both to assert claims under section 1983 and additionally to request habeas intervention pursuant to 28 U.S.C. §§ 2241 and 2254.  In response to a directive from the court that he provide clarification regarding the nature of this proceeding, and specifically whether he seeks available recourse for a civil rights deprivation or instead habeas relief, plaintiff filed an amended complaint advising that he is asserting a civil rights deprivation.

I.   BACKGROUND[2]

Plaintiff is a New York State prison inmate as a result of a 2002

conviction entered in Richmond County Supreme Court, following a jury

trial, for second degree manslaughter, resulting in the imposition of an

indeterminate sentence of incarceration of between five and fifteen years.

Amended Complaint (Dkt. No. 9) ¶ 3; *see also People v. Krebs*, 11 A.D.

3d 713, 784 N.Y.S.2d 564 (2d Dep't 2004).  Plaintiff's conviction was

based upon his fatal stabbing of an unarmed victim.  *See id.*  At the

relevant times, plaintiff has been designated by state prison officials to the

Shawangunk Correctional Facility ("Shawangunk"), located in Wallkill,

New York.  Amended Complaint (Dkt. No. 9) ¶ 3.

On December 13, 2005, plaintiff was interviewed by defendants

Edward Mevec and Ileana Rodriguez, two New York State parole

commissioners, as well as a third parole commissioner, identified only as

"Manley" and not named as a defendant in this action.  Amended

Complaint (Dkt. No. 9) ¶ 20.  As a result of that session, plaintiff was told

that parole had been granted and was given an open release date of

---

[2]     In light of the procedural posture of the case, the following recitation is
drawn principally from plaintiff's amended complaint, Dkt. No. 9, the allegations of
which have been credited, for purposes of the instant motion.  *See Erickson v. Pardus*,
551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, U.S.
127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct.
1733, 1734 (1964).

February 21, 2006.  *Id.*

On January 31, 2006 plaintiff was notified by G. Morgiewicz, a parole officer at Shawangunk, that the decision to grant him parole had been rescinded and his open release date cancelled.  *Id.* ¶ 24.  Plaintiff was provided a notice of suspension by Parole Officer Morgiewicz, advising that the decision was based upon "[i]information which existed or behavior which occurred prior to the parole release decision."  *Id.* ¶¶ 24-25.  Plaintiff was later notified on or about February 7, 2006 that the rescission was based upon a victim impact statement received by the parole board after issuance of the initial release decision, the victim's family having claimed not to have received notice of the fact that plaintiff was being considered for parole until after the December, 2005 decision.[3] *Id.* ¶ 29.

A formal hearing was convened on April 18, 2006 before Commissioners Rodriguez, James B. Ferguson, Jr., and Daizzee D. Bouey to address the rescission of parole.  Amended Complaint (Dkt. No. 9) ¶ 34.  Plaintiff appeared at that hearing, accompanied by legal counsel.

---

[3]      Plaintiff later learned that Parole Commissioner Mevec, Parole Officer Lynn Hamilton, and Parole Board Secretary Felix Rosa met with members of the victim's family on January 23, 2006 and permitted them to make statements to be used in connection with a decision of whether to rescind the earlier parole decision. Amended Complaint (Dkt. No. 9) ¶ 33.

*Id.* At the conclusion of the hearing the Board ordered plaintiff held for an additional twelve months and advised him that he would be scheduled to appear at another parole hearing in eight months. *Id.* ¶ 38. Subsequent appearances by the plaintiff before Parole Commissioners Vanessa Clark, George Johnson and R. Guy Vizzie on December 19, 2006, and before Commissioners Lisa Elovich, Henry Lemons and Sally Thompson on December 18, 2007, resulted in parole denials. *Id.* ¶¶ 39-42.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on March 6, 2008. Dkt. No. 1. In his initial complaint, plaintiff named as defendants various state officials and employees including, *inter alia*, former New York Governors Eliot Spitzer and George Pataki, and purported to assert a wide range of causes of action including civil rights claims under 42 U.S.C. § 1983 and requests for habeas relief pursuant to 28 U.S.C. §§ 2241 and 2254. *Id.* Upon initial review of plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis*, I issued a report and recommendation dated April 14, 2008, recommending that certain of plaintiff's claims be dismissed, and that he be required to choose whether he was seeking relief pursuant to section 1983, or instead requesting habeas intervention. Dkt. No. 6. That recommendation was adopted by

5

order issued by Chief District Judge Norman A. Mordue on May 7, 2008,

and amended on May 12, 2008 in which, *inter alia*, plaintiff's claim of cruel

and unusual punishment pursuant to the Eighth Amendment and *ex post*

*facto* causes of action were dismissed, and plaintiff was directed to select

between bringing suit under section 1983 or instead seeking habeas relief.

Dkt. Nos. 7, 8.

On June 6, 2008 plaintiff submitted an amended complaint in which

he clarified that his claims in this action are grounded in 42 U.S.C. § 1983.

Dkt. No. 9.  In his amended complaint, plaintiff eliminated certain

defendants, including Governors Spitzer and Pataki, but added "the New

York State Division of Parole" and various commissioners and employees

of the Board as parties.  *See id.*  Plaintiff's amended complaint asserts a

variety of claims including, *inter alia*, alleged violations of the Equal

Protection and Due Process clauses of the Fourteenth Amendment and

cause of action for conspiracy, arguing that he has been arbitrarily denied

release on parole.  *Id.*

In response to plaintiff's amended complaint defendants moved on

December 18, 2008 for its dismissal, pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, advancing several grounds for rejection

of all of plaintiff's claims, arguing that 1) suits against the New York State

6

Division of Parole and the other named defendants in their official capacities are barred by the Eleventh Amendment when defendants are acting in their official capacities; 2) defendants are entitled to absolute immunity; 3) plaintiff's due process claim is legally deficient; 4) plaintiff has failed to state a valid equal protection claim; 5) plaintiff's conspiracy claim fails as a matter of law; and 6) defendants are entitled to qualified immunity from suit.  Dkt. No. 32.  Plaintiff has since responded in opposition to defendants' motion on January 26, 2009.  Dkt. No. 34.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    <u>DISCUSSION</u>

A.    <u>Dismissal Motion Standard</u>

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny.  *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S.

7

Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 127 S. Ct. 1955,1964-65 (2007)).  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  *Id.*  While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft,* 129 S. Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face.  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).  As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'"  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when

8

determining whether it states a cognizable cause of action.  *Erickson*, 127

S. Ct. at 2200 ("'[A] *pro se* complaint, however inartfully pleaded, must be

held to less stringent standards than formal pleadings drafted by lawyers'")

(quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976)

(internal quotations omitted)); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir.

2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121

(N.D.N.Y. 2004) (Hurd, J.).  In the event of a perceived deficiency in a *pro*

*se* plaintiff's complaint, a court should not dismiss without granting leave

to amend at least once if there is any indication that a valid claim might be

stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also*

Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice

so requires").

###### B.    Eleventh Amendment

Plaintiff's claims in this action are asserted against defendants both

individually, and in their official capacities as state employees.  Amended

Complaint (Dkt. No. 9) ¶¶ 5-16.  Defendants contend that plaintiff's claims

for damages against the New York State Division of Parole and those

against the various other defendants in their official capacities are subject

to dismissal on the basis of the immunity which the Eleventh Amendment

affords.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought.  *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978).  This absolute immunity which states enjoy under the Eleventh Amendment extends both to state agencies, and in favor of state officials sued for damages in their official capacities when the essence of the claim involved seeks recovery from the state as the real party in interest.[4] *Richards v. State of New York Appellate Div., Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing *Pugh* and *Cory v. White*, 457 U.S. 85, 89-91, 102 S. Ct. 2325, 2328-29 (1982)).  "To the extent that a state official is sued for damages in his official capacity . . . the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."[5]  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105 (1985).  The Eleventh Amendment immunity does not extend to employees who are

---

[4]     In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the state.  As the Supreme Court has reaffirmed relatively recently, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment.  *Northern Ins. Co. of New York v. Chatham County*, 547 U.S. 189, 193, 126 S. Ct. 1689, 1693 (2006).

[5]     By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983.  *See Hafer*, 502 U.S. at 30-31, 112 S. Ct. at 364-65.

sued in their personal or individual capacity. *Schwartz v. Dennison*, 518 F. Supp. 2d 560, 570 (S.D.N.Y. 2007) (citing *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988)).

Plaintiff's section 1983 damage claims against the New York State Division of Parole and the individual board members and officers in their official capacities typify those against which the Eleventh Amendment protects, and are therefore subject to dismissal. *Daisernia v. State of New York,* 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.). Accordingly, I recommend dismissal of plaintiff's claim for damages against the New York State Division of Parole and the various other defendants in their official capacities.[6]

C.    <u>Absolute Immunity</u>

Defendants contend that parole officials enjoy absolute immunity from liability when they are performing functions related to the decision of whether to grant, deny or revoke parole. In response, plaintiff contends that the action of obtaining and considering allegedly untimely and false witness statements should not be deemed to fall within the category of functions warranting the protections of absolute immunity.

---

[6]    As plaintiff correctly observes, the Eleventh Amendment does not necessarily preclude him from seeking declaratory and injunctive relief against the defendants in their capacities as state employees. *Montero v. Travis*, 171 F.3d 757 (2d Cir. 1999).

The concept of immunity assumes that a risk of error and possible injury outweighs not deciding or acting at all.  *Scheuer v. Rhodes*, 416 U.S. 232, 242, 94 S. Ct. 1683, 1689 (1974).  In order for a penal system to function properly, a parole board official should "be free to act upon his [or her] own convictions, without apprehension of personal consequences to himself."  *Montero*, 171 F.3d at 760-61 (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)).  Absolute immunity applies to suits for damages against parole board officials "when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole."  *Montero*, 171 F.3d at 761.  See also *Schwartz,* 518 F. Supp. 2d at 570; *Farid v. Bouey*, 554 F. Supp. 2d 301, 317 (N.D.N.Y. 2008) (Sharpe, J.); *Jones v. Coughlin,* 665 F. Supp. 1040, 1045-46 (S.D.N.Y 1987).

It should be noted that the Supreme Court has generally been "quite sparing" in recognizing claims of absolute official immunity.  *Forrester v. White*, 484 U.S. 219, 224, 108 S. Ct. 538, 542 (1988).  A court should find absolute immunity only in circumstances where the official can demonstrate that absolute, rather than qualified, immunity is required by public policy.  *Scotto v. Almenas*, 143 F.3d 105, 110 (2d Cir. 1998) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 201, 106 S. Ct. 496, 500-01 (1985)).  A parole official who claims the benefit of absolute immunity bears the

burden of showing that public policy requires that it be invoked. *DiBlasio v. Novello*, 344 F.3d 292, 297 (2d Cir. 2003) *cert. denied*, 541 U.S. 988, 124 S. Ct. 2018 (Apr. 19, 2004) (quoting *Butz v. Economou*, 438 U.S. 478, 515, 98 S. Ct. 2894, 2915 (1978)).

Absolute immunity is less likely to attach when the official function becomes more distant from the judicial process, such as when the officer acts at his or her own initiative, rather than that of the court. *Scotto*, 143 F.3d at 111 (citing *Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990); *Galvan v. Garmon*, 710 F.2d 214, 215-16 (5th Cir. 1983)). In deciding whether absolute immunity should apply, there must be a factual inquiry to determine the particular acts or responsibilities that each official performed. *King v. Simpson*, 189 F.3d 284, 288 (2d Cir. 1999) (quoting *Stewart v. Lattanzi*, 832 F.2d 12, 13 (2d Cir. 1987)). If the officer's "function was administrative rather than adjudicative or prosecutorial and not integrally related to the judicial process," qualified, not absolute immunity would not attach. *King*, 189 F.3d at 288 (citing *Scotto*, 143 F.3d at 111-13); *Stewart*, 832 F.2d at 13. It is important to note that even if a judicial function is performed in an erroneous manner or does not adhere to statutory criteria, the function does not become any less judicial in nature. *Quartararo v. Catterson*, 917 F. Supp 919, 951 (E.D.N.Y. 1996)

13

(quoting *Tarter v. State of New York*, 68 N.Y.2d 511, 517-18, 503 N.E.2d 84, 87 (1986)).

Plaintiff's amended complaint names defendants Rodriguez, Ferguson, Bouey, Clark, Johnson, Vizzie, Elovich, Lemons and Thompson as parole commissioners who participated in the decisions to deny him release on parole on April 18, 2006, December 19, 2006 and December 18, 2007.  Amended Complaint (Dkt. No. 9) ¶¶ 34-42.  Since plaintiff concedes that each of these defendants was engaged in a quasi-adjudicative function when voting to deny him parole, I recommend dismissal of all damage and injunctive claims against these nine defendants on the independent basis of absolute immunity.

Turning to defendants Mevec, Hamilton and Rosa, plaintiff alleges that those defendants convened a meeting with the victim's family and allowed "improper statements and comments" to be recorded into the transcripts.  *Id.* ¶¶ 20, 33.  These allegations against Mevec, Hamilton and Rosa relate solely to their participation in the parole release decision, and thus also fall comfortably within the protection afforded by absolute immunity.  Accordingly, I recommend dismissal of plaintiff's claims against these defendants as well.

Plaintiff's amended complaint requests both monetary and injunctive

14

relief, including multiple requests for orders declaring that the practices
and policies of the Parole Board violate the Fourteenth Amendment.
Amended Complaint (Dkt. No. 9) at pgs. 12-13.  Absolute immunity not
only bars suits against an employee for monetary damages, but
additionally precludes claims for injunctive relief "unless a declaratory
decree was violated or declaratory relief was unavailable."  *Montero*, 171
F.3d at 761.  Since plaintiff does not allege either of the exceptions, he is
therefore barred from injunctive relief as well as damages under section
1983 against each of the defendants.

      D.    <u>Due Process</u>

      To successfully state a claim under section 1983 for denial of due
process, a plaintiff must show that he 1) possessed an actual liberty
interest, and 2) was deprived of that interest without being afforded
sufficient process.  *See Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000)
(citations omitted); *Hynes v. Squillance*, 143 F.3d 653, 658 (2d Cir. 1998)
*cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (Oct. 5, 1998); *Bedoya v.
Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).  "[T]he first inquiry in the
analysis of an alleged due process violation is whether there exists a
protected liberty interest" which is at stake in the case.  *Barna v. Travis*,
No. CIV97CV1146 (FJS/RWS), 1999 WL 305515, at *1 (N.D.N.Y. Apr. 22,

1999) (Smith, M.J.) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908 (1989)).

In a case such as this, the burden initially rests with the plaintiff to show that he or she enjoys a protected liberty interest under New York's statutory parole scheme.  While the presence or absence of language in a state's parole provisions mandating release was once regarded as dispositive on this score, *see, e.g. Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 11-13, 99 S. Ct. 2100, 2106-07 (1979), the Supreme Court has more recently held that the focus of the inquiry should be on the nature of the interest allegedly created by the state.  *Sandin v. Conner*, 515 U.S. 472, 479-83, 115 S. Ct. 2293, 2298-2300 (1995).

### 1.    Rescission of Parole

New York Executive Law § 259-i(2)(c), the statute governing the parole process, affords broad discretion to the Parole Board in determining whether to grant or deny an inmate's application for early release.  For this reason, the Second Circuit has recognized that the New York State parole process creates no legitimate expectation of release prior to the end of an inmate's sentence, and that as such there is no constitutional entitlement on the part of such a person seeking release to

16

the full panoply of procedural due process protection.  *Barna v. Travis*,

239 F.3d 169, 171 (2d Cir. 2001); *see Morel v. Thomas*, No. 02 CV 9622,

2003 WL 21488017, at *4 (S.D.N.Y. June 26, 2003) (Baer, J.).  As that

court has succinctly noted, "[n]either the mere possibility of release... nor a

statistical probability of release... gives rise to a legitimate expectancy of

release on parole" sufficient to support a due process claim.  *Barna v.*

*Travis,* 239 F.3d at 170-71 (citations omitted).

Plaintiff argues that while, generally speaking, a New York prison

inmate has no constitutionally recognized right to be released on parole

prior to the expiration of his or her own sentence, Correction Law § 805

confers a protected liberty interest upon an inmate who has received a

Certificate of Earned Eligibility.  Amended Complaint (Dkt. No. 9) ¶ 36.

That section provides that

> an inmate who is serving a sentence with a
> minimum term of not more than eight years and
> who has been issued a certificate of earned
> eligibility, shall be granted parole release at the
> expiration of his minimum term... unless the board
> of parole determines that there is a reasonable
> probability that, if such inmate is released, he will
> not live and remain at liberty without violating the
> law and that his release is not compatible with the
> welfare of society.

N.Y. Correction Law § 805 (McKinney's 2007).  Several courts have

interpreted this language as giving rise to a limited liberty interest entitling

"inmates to some due process protections in the consideration of their parole applications."  *Schwartz*, 518 F. Supp.2d at 572; *Walters v. Ross*, No. CV-92-2290 (CPS), 1992 WL 398307, at *3 (E.D.N.Y. Dec. 21, 1992) (Sifton, J.); *Gittens v. Thomas*, No. 02 Civ. 9435 (JSM), 2003 WL 21277151, at *1 (S.D.N.Y. May 30, 2003) (Martin, J.).

Once the court determines an inmate has a protected liberty interest by virtue of section 805, he or she is "entitled to 'an opportunity to be heard, and when parole is denied [the Parole Board] informs the inmate in what respects he [or she] falls short of qualifying for parole.'" *Schwartz*, 518 F. Supp. 2d at 572 (quoting *Greenholtz*, 442 U.S. at 16, 99 S. Ct. at 2108).  Due process is satisfied in such a case when the inmate is afforded "1) advance written notice of the disciplinary charges; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his [or her] defense; and 3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."  *Schwartz*, 518 F. Supp. 2d at 572 (quoting *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454, 105 S. Ct. 2768, 2773 (1985)).

In addition to the rights conferred under section 805, a protected liberty interest also attaches upon establishment of an early release date,

thus requiring that due process be afforded in any subject rescission

hearing.  *See Green v. McCall*, 822 F.2d 284, 287-88 (2d Cir. 1987);

*Brown v. Selsky*, No. 95-CV-1585, 1997 WL 289162, at *3 (N.D.N.Y. May

30, 1997) (Pooler, J.).  New York State Parole Board rules and regulations

outline the specific procedures to be followed for reconsideration of a

parole release date.  N.Y. COMP. R. & REGS. tit. 9, § 8002.5 (2009).

Under those rules, whenever it may come to the attention of the Board

that there may be a basis for reconsideration, the inmate's release date

may be temporarily suspended.  *Id.* at § 8002.5(b).  The Board's

regulations afford it the discretion in determining whether temporary

suspension and rescission may be appropriate, stating that events that

may lead to the same "shall include, but not be limited to: significant

information which existed . . . prior to the rendition of the parole release

decision, where such information was not known by the board . . . "  *Id.* at

§ 8002.5(b)(2)(i).  If it is determined that such information exists, the

inmate shall be held for a rescission and presented with a copy of the

Board's rescission report and notice of the hearing.  *See generally id.* at §

8002.5(b).  "Furthermore, New York Law governing parole releases grants

an inmate undergoing a rescission hearing the right to be represented by

counsel, appear and speak in his own behalf, present and confront

witnesses and introduce documentary evidence." *Rizo v. Smith*, No. 99-

CV-0188E(B), 2004 WL 2360039, at *2 (W.D.N.Y. Oct. 20, 2004) (Elfvin,

J.) (citing N.Y. COMP. R. & REGS. tit. 9, § 8002.5(b)(5) (2004)).

After carefully reviewing the record in this case and accepting

plaintiff's allegations as true, it nonetheless appears clear that while

plaintiff has established that he possessed a protected liberty interest

based on his receipt of the Certificate of Earned Eligibility and the grant of

an open release date, he was afforded sufficient due process during the

course of proceedings leading to the deprivation of that liberty interest.

Amended Complaint (Dkt. No. 9) ¶¶ 20, 36.  Plaintiff admits that on

February 7, 2006 he received a letter detailing the reasons for the

suspension of his release date.  *Id.* ¶ 29.  The notice indicated that the

Board had received a victim impact statement after the release decision

was rendered.  *Id.* ¶ 29.  Plaintiff concedes that at the rescission hearing

on April 18, 2006 he was represented by counsel, and given an

opportunity to present witnesses and evidence, and specifically addressed

his contentions that the statements provided by his victim's family were

untimely and false.  *Id.* ¶¶ 34-35.

Although plaintiff claims the Parole Board did not give proper

consideration to his Certificate of Earned Eligibility, due process does not

require the Board to specify upon which evidence it has based its

decision, but instead only requires an explanation as to in what respects

the inmate fell short of qualifying for parole to guide his future behavior.

*Schwartz*, 518 F. Supp. 2d at 573 (citations omitted).  This is not to say

that a prison inmate may constitutionally be denied parole for purely

arbitrary or otherwise impermissible reasons.  *Boddie v. New York State*

*Div. of Parole*, 288 F. Supp. 2d 431, 440 (S.D.N.Y. 2003).  To the extent

that plaintiff claims the Parole Board's rescission determination was

arbitrary and capricious, the law is clear that the minimum requirements of

due process are met if there is some evidence that supports the

conclusion reached by the Board.  *Friedl v. City of New York,* 210 F.3d 79,

85 (2d Cir. 2000).   Plaintiff admits he was informed that the Board's

decision to rescind parole was based upon statements made by the

victim's family and friends that were recorded and included as part of the

record of the rescission hearing.[7]  Amended Complaint (Dkt. No. 9) ¶¶ 33-

35.  Thus, by plaintiff's own admission, there was some evidence in the

---

[7]       Victim impact statements are properly considered by the Parole Board in
rendering its decision.  N.Y. COMP. R. & REGS. tit. 9, § 8002.4(b) (2009).  Moreover,
the fact that these statements may have been received and considered after plaintiff
was granted parole is of no moment in light of the fact that the Board has the
discretion to consider such statements even after the time for submission (N.Y. COMP.
R. & REGS. tit. 9, § 8002.4(b) (2009)) and that reconsideration of an open release date
may be based on information which existed at the time of the original parole hearing
but was not known by the Board (N.Y. COMP. R. & REGS. tit. 9, § 8002.5(b)(2)(i)
(2009)).

record upon which the decision to rescind his parole was predicated.

### 2.   Subsequent Parole Denial

Plaintiff also contends that he was denied due process with respect to the Parole Board's December 19, 2006 decision to deny him parole and that the decision was arbitrary and capricious.  Amended Complaint (Dkt. No. 9) ¶ 39.   As was previously noted, under New York's parole regime plaintiff possessed a protected liberty interest in being released on parole based upon his receipt of a Certificate of Earned Eligibility.  *Schwartz,* 518 F. Supp. 2d at 572.   At his parole hearing plaintiff was therefore entitled to be heard, and to an explanation of why parole was denied.

In deciding whether to grant parole, New York law directs parole officials to consider certain specified factors, among them being the underlying offense, but does not specify the weight to be attached to each factor.  N.Y. Exec. Law § 259-i(2)(c)(A); *Mitchell v. Conway,* No. 04 CV 1088 (CBA), 2006 WL 508086, at *4 (E.D.N.Y. Mar. 1, 2006) (Amon, J.). That section specifically provides that

> [d]iscretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness

of his crime as to undermine respect for law.

N.Y. Exec. Law § 259-i(2)(C)(A) (McKinney's, 2009).  Accordingly, "[t]he

parole board may in its discretion find that any one of these factors,

including the severity of the inmate's offense of conviction, outweighs the

other factors in a particular case and is grounds to deny parole."  *Mitchell*,

2006 WL 508086, at *4.  "Simply because the Board found the extremely

serious nature of the crime so outweighs petitioner's impressive

accomplishments while in prison as to warrant a denial of parole does not

mean the board abused its discretion."  *Anthony v. New York State Div. of

Parole*, No. 06 CV 180 (ARR), 2006 WL 3859215, at *2 (E.D.N.Y. Jan. 4,

2006) (Kazel, J.).  Consideration of the seriousness of the plaintiff's crime

is permitted, and the fact that the nature of the crime has been considered

does not evidence that the Board acted arbitrarily.  *Siao-Pao v. Connolly*,

564 F. Supp. 2d 232, 242-43 (S.D.N.Y. June 25, 2008) (Marrero, J.).

Plaintiff concedes that on December 19, 2006, seven months after

the rescission of his parole, he was given an opportunity to be heard by

the Parole Board regarding his release, and does not argue that he was

not apprised of the reasons for the resulting denial of parole on that date.

Amended Complaint (Dkt. No. 9) ¶ 39.  Rather, Krebs asserts that it was

improper for the Board to deny parole based upon his past criminal history

in the State of California.  *Id.*  Plaintiff further asserts that the Board

improperly considered his offer to plead to murder in the second degree –

a charge of which he was ultimately acquitted – and concluded that

plaintiff had received less prison time than he would have under the terms

of his proffered plea when ultimately sentenced to a term of five to fifteen

years upon his conviction for manslaughter in the second degree.

Amended Complaint (Dkt. No. 9) ¶ 42.  Even if this were true, it does not

follow that the Parole Board acted arbitrarily, since as these factors

amount to nothing more than consideration of the severity of the crime

and plaintiff's past criminal history, matters which are undeniably within

the discretion of the Board to consider in rendering its decision.

Having carefully considered plaintiff's claim that he was denied due

process in the context of his parole recision and ensuing parole denials,

while finding that plaintiff did possess a limited liberty interest thereby

triggering the due process requirements of the Fourteenth Amendment, I

conclude that he has failed to establish the existence of a plausible denial

of due process.  Accordingly, I recommend that plaintiff's due process

claims be dismissed as lacking in merit.

E.     Equal Protection Claim

Plaintiff's complaint, as amended, purports to assert a claim of

24

denial of equal protection, as guaranteed under the Fourteenth

Amendment.  The precise essence of plaintiff's equal protection claim,

however, is difficult to discern from his complaint.  In what could be

characterized as a reverse equal protection claim, plaintiff appears to

allege that as a class-C, non-violent felony offender, he has been treated

as harshly as violent felony offenders, and that the Fourteenth

Amendment somehow commands that governmental officials not treat

violent and non-violent felony offenders equally.  Amended Complaint

(Dkt. No. 9) ¶¶ 46-47, 49-51.  Plaintiff also asserts that the nature of the

offense committed, his past criminal history, his pretrial plea offer, the

existence of untimely and false victim impact statements and adverse

public reaction were the only factors given any weight in determining his

eligibility for parole, while other inmates are given due consideration of

other statutory criteria in determining whether to grant release.  *Id.* ¶¶ 39,

42, 46, 49, 51.

The Equal Protection Clause directs state actors to treat similarly

situated people alike.  *See City of Cleburne, Texas v. Cleburne Living Ctr.*,

473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985).  To prove a violation of

the Equal Protection Clause, a plaintiff must demonstrate that he or she

was treated differently than others similarly situated as a result of

intentional or purposeful discrimination directed at an identifiable or suspect class.  *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing, *inter alia*, *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767 (1987)).  The plaintiff must also show that the disparity in treatment "cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not reasonably related to [any] legitimate penological interests." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225, 121 S. Ct. 1475, 1477 (2001) (internal quotation marks omitted)).  The alleged disparate treatment must be "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Quartararo*, 917 F. Supp at 946 (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-610 (2d Cir. 1980), *cert. denied*, 450 U.S. 959, 101 S. Ct. 1418 (1981)).

Plaintiff's amended complaint fails to allege facts sufficient to demonstrate that he was treated differently than other inmates, similarly situated, based on impermissible considerations.  *See Manley v. Thomas*, 255 F. Supp. 2d 263, 267-68 (S.D.N.Y. 2003).  Plaintiff makes no claim that the determinations to rescind and/or deny parole were premised upon

race, religion or an intent to punish the exercise of constitutional rights, and the amended complaint is barren of any facts that would tend to show that those decisions were motivated by malice or a bad faith intent to injure plaintiff.  Rather, plaintiff merely alleges that by considering false and untimely victim impact statements (Amended Complaint (Dkt. No. 9) ¶ 47), rescinding based upon the "nature of the offense," (*Id.* ¶ 49), and rescinding and denying parole based upon public reaction and pressure (*Id.* ¶ 50), the Parole Board violated his equal protection rights.  These allegations are insufficient to support a claim that plaintiff suffered disparate treatment.

It should be noted that the law expressly permits the Parole Board to consider all of the factors plaintiff offers in support of his equal protection claim.  Parole Board regulations provide that victim impact statements may be considered by the Board when received "at least 10 business days prior to the date of the inmate's scheduled appearance before the board." N.Y. COMP. R. & REGS. tit. 9, § 8002.4(b) (2009).  "However, in its sole discretion, the board may waive one or more requirements of this section in order to further its policy of ensuring that crime victims are treated with fairness, sensitivity and dignity."  *Id.* at 8002.4(d).  Thus, even if plaintiff is correct that the statements were not timely received, the Parole Board

appropriately exercised its discretion in deciding whether to consider them in order to determine the family's state of mind and their opinions, not for their truth.  See *Pugh v. New York State Board of Parole*, 19 A.D.3d 991, 994, 798 N.Y.S.2d 182, 184 (3d. Dep't. 2005).

Additionally, as was noted earlier, it was proper for the Parole Board to consider both the seriousness of the offense and plaintiff's prior criminal record in deciding whether to grant parole.  *See* N.Y. Exec. Law § 259-i(1)(a)(i-ii).  Finally, plaintiff's claim that denial of parole based on adverse public and political pressure violates the equal protection clause is equally unavailing.  These pressures are permissible factors which parole officials may properly consider as they relate to "whether 'release is not incompatible with the welfare of society and will not so deprecate the seriousness of the offense as to undermine respect for the law.'" *Seltzer v. Thomas*, No. 03 Civ. 00931 LTS FM, 2003 WL 21744084, at *4 (S.D.N.Y. July 29, 2003) (Maas, M.J.) (quoting *Morel*, 2003 WL 21488017 at *5).

Since plaintiff is unable to demonstrate that the Parole Board considered any constitutionally suspect factors in rescinding and/or denying his parole, I recommend defendants' motion to dismiss this claim for failure to state a cause of action be granted.

28

F.   Conspiracy

In his amended complaint, plaintiff alleges that defendants conspired among themselves, and with the victim's family, in order to continually deny him parole.  Amended Complaint (Dkt. No. 9) ¶¶ 33, 43.

To sustain a conspiracy claim under § 42 U.S.C. 1983, a plaintiff must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights . . . secured by the Constitution or the federal courts." *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (citations and internal quotation marks omitted).  Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983.  *See Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983), *cert. denied*, 464 U.S. 857, 104 S. Ct. 177 (1983).

In order to support a claim of conspiracy to commit a civil rights violation, a plaintiff must establish the existence of such a deprivation; a claim of conspiracy, standing alone, is insufficient to support a finding of liability under section 1983.  *Britt v. Garcia*, 457 F.3d 264, 269-70 (2d Cir. 2006); *Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir. 1993) (collecting cases).  In this case, since I have already found that plaintiff's complaint

29

fails to state a plausible claim for deprivation of civil rights, his conspiracy claim is likewise subject to dismissal for failure to state a cause of action. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997).

      G.    Qualified Immunity

In addition to invoking absolute immunity and asserting that plaintiff's claims lack merit, defendants also assert their entitlement to qualified immunity from suit. Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) (citations omitted). Accordingly, governmental officials sued for damages "are entitled to qualified immunity if 1) their actions did not violate clearly established law, or 2) it was objectively reasonable for them to believe that their actions did not violate such law." *Warren v. Keane*, 196 F.3d 330, 332 (2d Cir. 1999) (citing *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996)); *see also Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007); *Iqbal v. Hasty*, 490 F.3d 143,152 (2d Cir. 2007), *rev'd on other grounds Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (May 18, 2009). The law of qualified immunity seeks to strike a balance between overexposure by government

30

officials to suits for violations based upon abstract rights and an unduly

narrow view which would insulate them from liability in connection with

virtually all discretionary decisions.  *Locurto v. Safir*, 264 F.3d 154, 162-63

(2d Cir. 2001);   *Warren*, 196 F.3d at 332.  As the Second Circuit has

observed,

> [q]ualified immunity serves important interests in our
> political system, chief among them to ensure that
> damages suits do not unduly inhibit officials in the
> discharge of their duties by saddling individual officers
> with personal monetary liability and harassing litigation.

*Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (internal

quotations omitted) (citing, *inter alia*, *Bivens v. Six Unknown Named*

*Agents of the Fed. Bureau of Narcotics*, 456 F.2d 1339, 1348 (2d Cir.

1972)).

Until recently, it was generally agreed that a proper qualified

immunity analysis entailed a three step inquiry.  *Harhay v. Town of*

*Ellington Bd. of Educ.*, 323 F.3d 206, 211-12 (2d Cir. 2003).  As a

threshold matter a court considering the issue was charged with first

determining whether, based upon the facts alleged, the plaintiff had

facially established a constitutional violation.  *Id.*; *Gilles v. Rey*, 511 F.3d

239, 243-44 (2d Cir. 2007).  If the answer to this inquiry was in the

affirmative, then the focus turned to whether the right in issue was clearly

established at the time of the alleged violation.  *Id.*  (citing *Saucier v. Katz*,

533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156 (2001));  *see also Poe v.*

*Leonard*, 282 F.3d 123, 132-33 (2d Cir. 2002).  Finally, upon determining

that the plaintiff had a clearly established, constitutionally protected right

which was violated, the court next considered whether it was nonetheless

objectively reasonable for the defendant to believe that his or her action

did not abridge that established right.  *Harhay*, 323 F.3d at 211; *Poe*, 282

F.3d at 133 (quoting *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir.

1998) (quoting, in turn, *Salim*, 93 F.3d at 89)).

The United States Supreme Court recently had the opportunity to

reconsider the analysis prescribed by *Saucier*, holding that while the

sequence of the inquiry set forth in that case is often appropriate, it should

no longer be regarded as compulsory.  *Pearson v. Callahan*, 555 U.S.

___, 129 S. Ct. 808, 2009 WL 128768, at *9 (Jan. 21, 2009).  In *Pearson*,

the Court reasoned that while the *Saucier* protocol promotes the

development of constitutional precedent and is "especially valuable with

respect to questions that do not frequently arise in cases in which a

qualified immunity defense is unavailable," the rigidity of the rule comes

with a price.  *Id.* at *10.  The inquiry often wastes both scarce judicial and

party resources on challenging questions that have no bearing on the

outcome of the case.  *Id.*  Given that the purpose of the qualified immunity

doctrine is to ensure that insubstantial claims are resolved prior to

discovery, the Court opined that the algorithm prescribed by *Saucier* may

serve to defeat this goal by requiring the parties "to endure additional

burdens of suit – such as the cost of litigating constitutional questions and

delays attributable to resolving them – when the suit otherwise could be

disposed of more readily."  *Id*. (quotations and citations omitted).

     As a result of its reflection on the matter, the *Pearson* Court

concluded that because the judges of the district courts and courts of

appeals "are in the best position to determine the order of decisionmaking

[that] will best facilitate the fair and efficient disposition of each case",

those decision makers "should be permitted to exercise their sound

discretion in deciding which of the . . .  prongs of the qualified immunity

analysis should be addressed first in light of the circumstances of the

particular case at hand."  *Id.* at *9.  In other words, as recently

emphasized by the Second Circuit, the courts "are no longer *required* to

make a 'threshold inquiry' as to the violation of a constitutional right in a

qualified immunity context, but we are free to do so."  *Kelsey v. County of

Schoharie*, 567 F.3d 54, ___, 2009 WL 1424206, at *6 (2d Cir. May 22,

2009) (citing *Pearson*, 129 S. Ct. at 821) (emphasis in original).  "The

[*Saucier* two-step] inquiry is said to be appropriate in those cases where 'discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all.'" *Id.* (quoting *Pearson*, 129 S. Ct. at 818).

The question is whether "upon viewing the allegations of the complaint in the light most favorable to the plaintiff and drawing all inferences favorable to the plaintiff, [a] reasonable jury *could* conclude that it was objectively unreasonable for the defendants to believe that they were acting in a fashion that did *not* violate an established federally protected right, then the motion to dismiss must be denied." *Quartararo*, 917 F. Supp at 959 (quoting *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993). See also *Schwartz*, 518 F. Supp. 2d at 571.

Having carefully considered the record now before the court, I have already concluded that plaintiff has failed to allege any constitutional violations as a result of defendants' denial of his parole. Even assuming *arguendo* the existence of a potentially viable constitutional violation claim, however, I would recommend a finding that defendants are entitled to qualified immunity, in light of the fact that it was not objectively unreasonable for defendants to believe that they were acting in a manner that did not violate any of plaintiff's protected rights.

IV.   SUMMARY AND RECOMMENDATION

Understandably disappointed at having been told he would be released on parole in February of 2006 but later learning that the parole decision had been rescinded, plaintiff has asserted a variety of constitutional claims against various commissioners and employees of the New York State Division of Parole.  Plaintiff's claims against defendants, however, are precluded on a variety of grounds, including absolute and qualified immunity.  Additionally plaintiff's claims, which are grounded principally in the procedural due process and equal protection clauses of the Fourteenth Amendment, are lacking in merit and fail to state plausible claims of due process equal and protection violation deprivation. Accordingly, it is hereby respectfully,

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 32) be GRANTED, and that plaintiff's amended complaint be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85

(2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      June 25, 2009
            Syracuse, NY

36